# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00855-CV

**Kenneth Lobell, Appellant**

**v.**

**Capital Transport, LLC, Appellee[1]**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 257,590, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Kenneth Lobell, a Louisiana resident, appeals the trial court's order overruling his special appearance challenging the trial court's personal jurisdiction over him. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7); Tex. R. Civ. P. 120a. Capital Transport, LLC; Capital Oil Field Services, LLC; and Chad Denton sued Lobell, three companies owned by Lobell (the Lobell Companies), and three other individual defendants in Bell County. Lobell and the Lobell Companies filed a joint special appearance.[2] The trial court sustained the special appearance as to the Lobell Companies and overruled it as to Lobell. For the reasons that follow, we affirm the trial court's order.

---

[1] Capital Transport, LLC; Capital Oil Field Services, LLC; and Chad Denton are plaintiffs in the proceeding below. Lobell's notice of appeal did not list all of the plaintiffs/appellees individually. We refer to appellees as Capital Transport.

[2] The other defendants also filed special appearances that are not before us in this appeal.

**FACTUAL AND PROCEDURAL BACKGROUND[3]**

Denton and Randy Baker, both Texas residents, had worked with Buster Stabinski and Chad Hansen for a number of years on construction and disaster relief projects through several companies they formed or owned. One of those companies was Capital Transport, LLC, a Louisiana limited liability company located in Round Rock, Texas, in which Denton is the sole member. In the spring of 2011, the men formed the idea to develop and build a "man camp" to provide temporary residences, logistics, and transportation services to workers in the newly developing oil fields in North Dakota. It appears from the record that this new venture was to be undertaken through Capital Transport, LLC, and through new companies to be formed—although the individuals dispute whether a partnership was formed between them.[4] They agreed to use the name Capital Riggers Lodge as the name of the company housing the oil field workers. Through Capital Transport, LLC, and Capital Riggers Lodge, preliminary steps were taken, including securing water rights, applying for a conditional use permit, entering into a uniform offer to purchase land, entering into master agreements with various oil field companies, drafting marketing and informational booklets to provide to prospective investors, and developing a logo.

In the summer of 2011, the four men decided to change the name of the man camp housing the workers to Capital Lodge and form a Texas limited liability company, Capital Lodging, to build it; however, upon learning from the Texas Secretary of State that the name Capital Lodging

---

[3]  The factual and procedural background is taken from the record. Much of the factual background is disputed.

[4]  The record reflects that Denton and Hansen believed a partnership existed but that Baker and Stabinski did not believe a partnership was formed.

was already taken, Denton formed Capital Oil Field Services, which Capital Transport alleges was to serve as "the primary name of the partnerships to be formed by the partners."[5] Having determined that they needed additional funding, they decided to defer formation of Capital Lodging, LLC, until they found an investor.

Either Baker or Stabinski located Lobell as a potential investor, and in July 2011, Stabinski informed Denton that Lobell had resources and funding to contribute. Baker and Stabinski met with Lobell in Louisiana to discuss the project, and over the next few months, the five men discussed the project by telephone conversations, text messages, and emails. It was decided that Lobell would form Capital Lodging, LLC, and be its sole member. According to Capital Transport, Lobell agreed to enter into an operating agreement with the others, providing that 65% of the rents and deposits would go to Lobell and 35% would go to the others until Lobell's investment was recouped, at which time each would receive 20% of the profits. Capital Transport also alleges that in late July 2011, while Denton was in Texas and Lobell was in Louisiana, Denton and Lobell agreed by telephone to operate the trucking aspect of the project through Capital Transport and use a new bank account at Chase Bank in Round Rock. Around the same time, Lobell bought an 80-acre tract of land in North Dakota proposed as the site for the man camp in his own name and registered Capital Lodging, LLC, with the secretary of state in Louisiana.

---

[5] Capital Transport alleges that the marketing materials show the name and logo "Capital" with the full name "Capital Oil Field Services LLC." Capital Transport also alleges that "Capital Transport, LLC's operation would generate operating cash, development costs and a source of capital development" and that "[s]ubsequent projects were to be placed within the 'family' of partnerships operated by Capital Oil Field Services, LLC."

Capital Transport alleges that around this same time, Baker told Denton that the highest priority was to get the project up and running and that the operating agreement would be put in place when Lobell drafted it. Through Capital Transport, LLC, and Capital Oil Field Services, Denton prepared applications for insurance, contractor licenses, and other documents, proceeding under the impression that the five men had formed a partnership. Capital Transport further alleges that during this time period, Baker and Hansen told Denton they needed to concentrate on the man camp and defer work on Capital Transport, LLC's business of trucking and oil rig transportation. In August, Denton became concerned about the status of the operating agreement and traveled to North Dakota. He observed numerous trucks and equipment trailers bearing the name "Capital" and "Capital Oil Field Services" on the sides and employees wearing baseball caps, shirts, and jackets with the name "Capital Oil Field Services." Concerned that the others had not been candid with him about concentrating on the man camp and deferring work on Capital Transport, LLC's trucking business in North Dakota, he drafted an operating agreement and presented it to Baker, Stabinski, and Hansen. Within a day or two, Baker told Denton that Lobell did not want Denton to be involved in any projects going forward. Denton then traveled to Louisiana to meet with Lobell. At the meeting, Lobell informed Denton that he had never intended to enter into a partnership agreement whereby he provided most of the funding but received only 20% of the profits. After that meeting, Baker, Stabinski, and Hansen ceased communicating with Denton and refused to provide him any information about Capital Lodging or the other business entities.

Capital Transport filed this suit in Bell County, Texas, in June 2012, alleging breach of partnership agreement and a variety of tort claims. After being served by substituted service

4

several months later, Lobell and the Lobell Companies filed a verified special appearance under Rule 120a of the Texas Rules of Civil Procedure, asserting that the trial court lacked personal jurisdiction over them. *See* Tex. R. Civ. P. 120a.[6] Lobell and the Lobell companies did not attend the hearing on their special appearance. At the hearing, both sides offered argument and evidence, and Denton testified. The trial court sustained the special appearance of the Lobell Companies and denied Lobell's special appearance. Lobell then filed this appeal.

## LONG-ARM JURISDICTION

Texas courts may assert jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *see* Tex. Civ. Prac. & Rem. Code § 17.042 (Texas long-arm statute). The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state or

> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

---

[6] In the meantime, Lobell had filed suit to quiet title to the man camp property against Denton, Capital Transport, LLC, and Capital Oil Field Services in state court in North Dakota and filed a motion seeking to cancel a lis pendens that the defendants had filed against the property. That suit was removed to federal district court based on diversity jurisdiction. The federal district court ordered the lis pendens cancelled and subsequently stayed that action pending a decision in the first-filed Bell County action. Also at some time after the Bell County suit was filed, although the record is not clear when, Lobell filed suit against Denton, Capital Transport, LLC, and Capital Oil Field Services in state court in Louisiana. That case was also removed to federal court and subsequently stayed.

5

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code § 17.042. The Texas Supreme court has concluded that the Texas long-arm statute allows Texas courts to exercise personal jurisdiction "'as far as the federal constitutional requirements of due process will permit.'" *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Consequently, "the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Moki Mac*, 221 S.W.3d at 575.

The exercise of jurisdiction over a nonresident comports with federal due process when (1) the nonresident has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "A defendant establishes minimum contacts with a state when [he] 'purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The requirement of "purposeful availment" encompasses three considerations. First, a court must consider only the defendant's contacts with the forum, not the unilateral activity of another party or a third person. *Moki Mac*, 221 S.W.3d at 575 (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784–85 (Tex. 2005)). In addition, the contacts on which jurisdiction

6

is based must be purposeful. *Id.* If the defendant's Texas contacts are random, fortuitous, or attenuated, the defendant is not subject to jurisdiction in Texas courts. *Id.* Finally, the defendant must seek some benefit, advantage, or profit by availing himself of the jurisdiction of Texas. *Id.* "The defendant's activities, whether they consist of direct acts within Texas or conduct outside of Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A nonresident defendant's contacts with the forum state can give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795. General jurisdiction exists when the defendant has made continuous and systematic contacts, such that the forum may exercise jurisdiction over the defendant even if the alleged liability does not arise from or relate to those contacts. *Id.* at 796. In contrast, specific jurisdiction exists only if the alleged liability arises out of or is related to the defendant's contacts with the forum. *Moki Mac*, 221 S.W.3d at 576. Here, the parties agree that only specific jurisdiction is at issue in this case. When specific jurisdiction is alleged, the focus of the minimum contacts analysis is the relationship among the defendant, the forum, and the litigation. *Id.* at 575–76 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). If the court concludes that a nonresident defendant has minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities here, it must then address whether the defendant's alleged liability arises out of or is related to those contacts. *See id.* at 579–85 (concluding that under relatedness requirement, there must be "substantial connection" between contacts and operative facts of litigation).

In determining whether asserting jurisdiction complies with traditional notions of fair play and substantial justice the following additional factors should be considered, when appropriate:

> (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate . . . judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several . . . states in furthering fundamental substantive social policies.

*Spir Star AG v. Kimich*, 310 S.W.3d 868, 878 (Tex. 2010). Only in rare circumstances will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts. *Id.*

## STANDARD OF REVIEW

Under the Texas long-arm statute, the plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the personal jurisdiction of a Texas court. *BMC Software*, 83 S.W.3d at 793. When the plaintiff meets this initial burden, the burden shifts to the nonresident to negate all bases of personal jurisdiction asserted by the plaintiff. *Id.* A defendant may negate jurisdiction on a legal basis by showing that even if the plaintiff's allegations are true, they do not establish jurisdiction. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). A defendant may also negate jurisdiction on a factual basis by introducing evidence that rebuts the allegations in the pleadings. *Id.* Only relevant jurisdictional facts, rather than the ultimate merits of the case, should be considered in deciding the issue of jurisdiction. *See Moncrief Oil*, 414 S.W.3d at 156 n.15.

8

When, as in this case, the trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software*, 83 S.W.3d at 795. When the appellate record includes the reporter's record and clerk's record, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* The ultimate determination of whether a court has personal jurisdiction over a defendant is a question of law that we review de novo. *Moncrief Oil*, 414 S.W.3d at 150. We need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts. *Id.* at 150–51.

**DISCUSSION**

In three issues, Lobell argues that Capital Transport has not shown that Lobell purposefully availed himself of the privileges and benefits of conducting business in Texas. Lobell contends that Capital Transport's claims of specific jurisdiction are based upon two factual allegations: (1) that Lobell had telephone conversations with Denton and Baker based on an alleged partnership and knew that they were Texas residents and (2) that when Denton was in North Dakota, he saw Lobell's employees wearing baseball caps bearing the name of Denton's company. While it is true that these are among Capital Transport's allegations, Rule 120a requires the trial court to determine a special appearance on the basis of not only the pleadings, but also any stipulations by the parties, affidavits and attachments filed by the parties, results of discovery, and any oral testimony. *See* Tex. R. Civ. P. 120a(3). Therefore, we must consider not only all of the allegations in Capital Transport's petition, but also the parties' affidavits, exhibits, discovery responses, and testimony that support or undermine the allegations. *See Kelly*, 301 S.W.3d at 658 n.4 (while

9

pleadings frame jurisdictional dispute, they are not dispositive, and court must consider additional evidence cited in Rule 120a(3), though this additional evidence merely supports or undermines allegations in pleadings).

**Evidence**

Capital Transport's live petition and the supporting affidavit of Denton contain the following factual allegations:[7]

- Lobell agreed to participate in the companies to be formed for the man camp housing, transportation, and other oil field services projects and met with Baker more than once to negotiate and firm up details.

- Lobell agreed to fund and did fund Capital Lodging and was open to funding the projects for Capital Transport, LLC, and Capital Oil Field Services, LLC.

- Lobell agreed to enter into an operating agreement with the others and agreed to divide the profits 65% to Lobell and 35% to the others until Lobell recouped his investment, and then divide the profits 20% to each of the five partners.

- Lobell subsequently told Denton the partners' split of profits was to be 68% to Lobell and 32% to the others, not 20% to each partner, but Lobell admitted that the original deal had been 20% to each partner.

- Denton and Lobell discussed operating the trucking project through Capital Transport using a new bank account at Chase Bank in Round Rock, Texas, and setting up a Capital Lodging account at Chase Bank in Round Rock, as well.

- In August 2011, Denton traveled to North Dakota where he saw trucks bearing the name "Capital" and "Capital Oil Field Services" and employees wearing baseball caps, shirts, and jackets bearing the name "Capital Oil Field Services."

---

[7] Although Lobell made a number of objections to Denton's affidavit, the trial court, without expressly ruling on the objections, admitted it for consideration of information specifically related to jurisdiction.

- Lobell said he would tell the other partners to share their percentages of the profits granted to them by Lobell with Denton.

- Lobell told Denton he would get a return of ten times his investment.

Denton also testified at the special appearance hearing. In addition to testifying to many of the facts alleged in the petition and stated in his affidavit, he also testified that the operations of the alleged partnership business were conducted at his home in Round Rock, Texas. He stated that all of the daily emails, phone calls, and text messages among the alleged partners, as well as the bill paying, were done in Round Rock and that there had been more than 450 bill paying transactions performed there. He also testified that the bank statements from the Chase account he and Lobell agreed to set up came to his home office in Round Rock. Bank records and bills addressed to Denton's Round Rock address and photographs were admitted into evidence.[8] Denton testified that the bank statements reflected "partnership" transactions and debit cards issued to the alleged partners and that the transactions included paying expenses for the alleged partners setting up the operations in North Dakota. He stated that the photographs showed signs and stickers on equipment at the "partnership" project with the Round Rock address and phone number. Based on this evidence, Capital Transport argues that Lobell knew that he was dealing with a Texas resident, that the heart of the operation would be in Texas, that there would be a bank account in Texas, that the bills would be sent to and paid from Texas, that disbursements would be evaluated in and paid from Texas, that

---

[8] At the hearing, Lobell made objections to the bank records and Capital Transport's other evidence that were overruled. In addition, in accordance with the trial court's instructions, Lobell submitted additional post-hearing objections to Capital Transport's exhibits. However, no ruling on those objections was issued by the trial court, and the record does not reflect that Lobell sought one.

11

the money he invested would go to Texas before North Dakota, and that he was dealing with a Texas entity.

Lobell offered no testimony by affidavit and, as noted, did not appear at the hearing. He filed a verified special appearance, which stated the following as facts:

- The man camp is wholly in North Dakota, and all pertinent facts occurred in North Dakota or Louisiana.

- There is an alternate forum (referring to the stayed case in North Dakota).

- He is not a Texas resident and does not have a place of business in Texas.

In the verified pleading, Lobell also denied that he has minimum contacts with Texas or has purposefully availed himself of the privileges of conducting business in Texas and stated that for a Texas court to assert personal jurisdiction over him is inconsistent with constitutional requirements of due process. In addition, as attachments to pleadings, Lobell submitted the petition and the order cancelling lis pendens from the proceeding in North Dakota and an excerpt from Denton's testimony in that proceeding. In that testimony, Denton stated that he did not intend to pay for the land in North Dakota and instead was looking for an investor, that he talked to Lobell about setting up an account with Chase Bank in Round Rock, that Baker, Stabinski, and Hansen refused to sign a written partnership agreement when he went to North Dakota, and that he is the only governing person in Capital Oil Field Services.

**Minimum Contacts**

Capital Transport's pleadings and evidence support an implied finding that Lobell negotiated and entered into an oral agreement to, and did, fund and participate in a business venture based in Texas, that he agreed to split the profits with others, including Texas residents, and that the business venture resulted in ongoing activities performed in Texas. *See* Tex. Civ. Prac. & Rem. Code § 17.042(1). The pleadings and evidence show that bills were sent to and paid from Round Rock, Texas, and that Denton's communications on behalf of Capital Transport concerning the alleged partnership emanated from Texas, including Denton's communications with Lobell in which Capital Transport alleges that Lobell agreed to participate in the business and operate out of an account with Chase Bank in Round Rock. Thus, the record reflects that Lobell "most certainly knew that he was affiliating himself with" a business based in Texas when he created continuing relationships with and obligations to Texas citizens Denton and Baker and that the alleged partnership had a substantial connection with Texas. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 479–80 (1985) (party who reaches out beyond one state and creates continuing relationships and obligations with citizens of another state is subject to regulation in other state for consequences of activities, and where all relevant notices and payments were sent to Florida and agreements were made and enforced in Miami, franchisee defendant "most certainly knew that he was affiliating himself with an enterprise based primarily in Florida," and contract had substantial connection with Florida).

Capital Transport's pleadings and evidence show that Lobell's contacts with Texas were his and not the unilateral conduct of another person; were purposeful and ongoing, not random,

13

isolated, or fortuitous; and were taken in an effort by Lobell to avail himself of the privilege of conducting business in Texas by establishing an ongoing relationship with and obligations to Texas residents in order to profit from a business operated out of Texas. *See Moki Mac*, 221 S.W.3d at 575. Capital Transport's allegations and evidence therefore establish that Lobell has minimum contacts with Texas sufficient to meet the jurisdictional requirement of purposeful availment. *See id.* at 579 (where Moki Mac's profit stemmed from marketing activities directed at Texas customers, Moki Mac had sufficient purposeful contact to satisfy first prong of jurisdictional due process). Capital Transport's allegations and evidence also establish that there is a substantial connection between Lobell's contacts and the operative facts of the litigation and that Lobell's alleged liability therefore arises from these contacts. *See id.* at 576, 579, 585. We therefore conclude that Capital Transport met its initial burden of pleading sufficient allegations to satisfy jurisdictional due process requirements and bring Lobell within the personal jurisdiction of a Texas court. *See Burger King*, 471 U.S. at 475–76 (where defendant has created continuing obligations to residents of forum, he has availed himself of privilege of conducting business there, and it is reasonable to require him to submit to litigation in forum); *BMC Software*, 83 S.W.3d at 793.

Because Capital Transport met its initial jurisdictional burden, the burden shifted to Lobell to negate all alleged bases of jurisdiction. *See BMC Software*, 83 S.W.3d at 793. The record reflects that Lobell offered no pleadings or evidence to negate Capital Transport's allegations and evidence. The factual allegations contained in Lobell's verified special appearance are insufficient to negate Capital Transport's allegations that he purposefully availed himself of the privilege of conducting business by establishing contacts with Texas residents to profit from a Texas-based

14

venture. *See Moki Mac*, 221 S.W.3d at 575, 579. In fact, Lobell's evidence does not even counter Capital Transport's specific jurisdictional allegations. Further, the legal conclusions contained in the special appearance—that Lobell did not have minimum contacts with Texas, that he had not purposefully availed himself of the privileges of conducting business in Texas, and that the exercise of personal jurisdiction over Lobell by a Texas court is inconsistent with the constitutional requirements of due process—are "substantially defective" conclusory statements and "amount to no evidence. *See Hoagland v. Butcher*, 396 S.W.3d 182, 193 (Tex. App—Houston [14th Dist.] 2013, pet. denied) (citing *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004)). The only evidence Lobell submitted was exhibits from the stayed proceeding in North Dakota, which have no bearing on Lobell's contacts with Texas. And the excerpt from Denton's testimony in the North Dakota proceeding does not even address, much less refute, Capital Transport's allegations concerning Lobell's contacts with Texas and actually repeats Capital Transport's allegation that Denton and Lobell discussed setting up the Chase Bank account and other aspects of the business. Although Lobell cites to the memo line on Capital Transport, LLC's checks indicating that Denton is the sole member, that does not negate Capital Transport's jurisdictional allegations. We conclude that Lobell failed to meet his burden to negate all bases of personal jurisdiction asserted by Capital Transport. *See BMC Software*, 83 S.W.3d at 793.

**Fair Play and Substantial Justice**

Having concluded that the minimum contacts requirement is met, we must consider whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *See Kimich*, 310 S.W.3d at 878. We apply the factors set out above. *See id.*

15

Requiring Lobell to litigate Capital Transport's claims in Texas would not pose an undue burden on him. Because of modern transportation and communication, distance alone is generally insufficient to defeat jurisdiction. *Id.* at 879. Moreover, Lobell resides in nearby Louisiana and has already initiated litigation in more-distant North Dakota. Further, Texas has a significant interest in providing a forum for redressing harm endured by a Texas resident. *See TexVa, Inc. v. Boone*, 300 S.W.3d 879, 891 (Tex. App.—Dallas 2009, pet. denied) (Texas has compelling interest in providing forum for redressing harm endured by resident of state). The record reflects that Capital Transport has expended considerable effort and funds and has an interest in resolving this controversy in Texas because that is where the litigation began. *See Retamco*, 278 S.W.3d at 341 (Retamco had interest in resolving controversy in Texas because that is where litigation began). The federal proceedings in North Dakota and Louisiana are stayed pending resolution of the Texas case, and the interstate judicial system's interest in efficient resolution of controversies would best be served by completion of this litigation in Texas. We do not find this to be one of those "rare circumstances" in which, although the nonresident defendant has purposefully established minimum contacts, the exercise of jurisdiction does not comport with fair play and substantial justice. *See Kimich*, 310 S.W.3d at 878. On balance, the burden on Lobell is minimal and is outweighed by Capital Transport's and Texas's interests in adjudicating this dispute here. The trial court's assertion of personal jurisdiction over Lobell comports with traditional notions of fair play and substantial justice. *See Kimich*, 310 S.W.3d at 879–80; *TexVa*, 300 S.W.3d at 891.

16

## CONCLUSION

We conclude that the pleadings and the evidence admitted at the hearing established specific jurisdiction over Lobell and that Lobell failed to carry his burden to negate all bases for the exercise of personal jurisdiction over him by a Texas court. We affirm the trial court's order.

_____
Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Affirmed

Filed:   December 15, 2015

17